*In re* MICHAEL MARTENS, a Person Alleged to be Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Michael Martens, Respondent-Appellant).

Second District    No. 2—93—1026

Opinion filed February 16, 1995.

William E. Coffin, of Guardianship and Advocacy Commission, of Chicago, and Teresa L. Berge, of Guardianship and Advocacy Commission, of Rockford, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE THOMAS delivered the opinion of the court:

The respondent, Michael Martens, appeals from an order of the circuit court of Kane County which involuntarily committed him to the Elgin Mental Health Center (the Center). The respondent contends that the order must be reversed because notice of the involuntary commitment proceedings was not given to the respondent's guardian as required by sections 3—609 and 3—611 of the Mental Health and Developmental Disabilities Code (the Code) (405 ILCS 5/3—609, 3—611 (West 1992)). He also contends that the order should be reversed because it was not supported by clear and convincing evidence.

The record shows that the respondent was voluntarily admitted to the Center on April 24, 1993. On July 28, 1993, he submitted a written notice to be discharged pursuant to section 3—403 of the Code (405 ILCS 5/3—403 (West 1992)). On August 2, 1993, a petition for involuntary commitment was filed alleging that the respondent was mentally ill and as a result was unable to provide for his basic physical needs so as to guard himself against serious harm. The petition was accompanied by two certificates signed by psychiatrists at the Center. The petition specifically listed the names and addresses of the respondent's guardians. The Center's "Master Treatment Plan" also noted that the guardians listed were guardians of the respondent's person and estate. The matter was scheduled for hearing August 6, 1993, and respondent was given notice of the time and place of the hearing. However, the respondent's guardians were not given notice of the hearing and they did not appear. The respondent appeared at the hearing and did not raise an issue with respect to the validity of the notice.

At the conclusion of the hearing, the trial court found that the respondent was a person subject to involuntary admission and ordered him to be hospitalized with the Center for 180 days.

On appeal, we must first address the respondent's contention that the failure to give notice to the respondent's guardians rendered the trial court's order invalid for lack of subject-matter jurisdiction.

■ ■ We find that the respondent's contention must be rejected. It is well settled that when a court's power to act is controlled by statute, the court is governed by the rules of limited jurisdiction, which means that the court's power is limited by the language of the statute. (*In re Long* (1992), 233 Ill. App. 3d 334, 337.) Subject-matter jurisdiction is the power of a particular court to hear the general type of case before it. (*In re Devine* (1991), 214 Ill. App. 3d 1, 3.) Section 3—100 of the Code provides that circuit courts have jurisdiction over persons not charged with a felony who are subject to involun-

tary admission to a mental health facility. (405 ILCS 5/3—100 (West 1992).) Under this statute, circuit courts are empowered to hear involuntary commitment cases, and this power is not affected by alleged deficiencies in the notice of the hearing. *In re Long*, 233 Ill. App. at 337.

■ Applying the above-mentioned principles, we find that the lack of notice to the respondent's guardians did not affect the subject-matter jurisdiction of the court. *In re Guardianship of Sodini* (1988), 172 Ill. App. 3d 1055, relied upon by the respondent, is distinguishable. There, the court found that failure to give notice of a guardianship hearing under section 11a—10(f) of the Probate Act of 1975 (755 ILCS 5/11a—10(f) (West 1992)) was a jurisdictional defect. In so finding, the court relied heavily upon the fact that a prior statute had required notice to relatives listed in the petition but expressly provided that failure to do so was nonjurisdictional. The statute was then replaced by a statute deleting the language making failure to provide notice nonjurisdictional. The court concluded that this change evinced an intent by the legislature to make service of notice jurisdictional. Our case, in contrast, does not involve a change in the statute or a guardianship proceeding. Moreover, the case law specifically holds that defects in notice do not affect the power of the court to hear involuntary commitment cases.

The respondent next argues that even if the trial court had subject-matter jurisdiction, its judgment must be reversed because of the failure to provide the guardians with notice. In response, the State argues that the respondent waived the issue by failing to raise it in the trial court.

■ Involuntary commitment proceedings invade a patient's liberty interest; thus, the statutory sections of the Code should be construed strictly in favor of the patient. (*In re Houlihan* (1992), 231 Ill. App. 3d 677, 681.) Inherent in the civil commitment proceeding are the distinct interests of providing patients with necessary treatment as well as protecting society from dangerous conduct. (*In re Williams* (1987), 151 Ill. App. 3d 911, 919.) Errors demonstrating noncompliance with the statutory provisions that appear on the face of the record may render a judgment erroneous even if not raised at trial; furthermore, such errors may be considered on appeal under a doctrine analogous to plain error. *In re La Touche* (1993), 247 Ill. App. 3d 615, 618.

■ The State relies on *In re Nau* (1992), 153 Ill. 2d 406, and *In re Splett* (1991), 143 Ill. 2d 225, in support of its argument that the respondent waived the issue. In those cases, the supreme court determined that faulty notice of a commitment hearing did not

require reversal where the respondents received actual notice and appeared at the hearing, thereby satisfying the purpose of the notice requirement. We find that the State's reliance on *In re Nau* and *In re Splett* is misplaced. In our case, there was a complete lack of notice instead of a mere defect in the notice. More importantly, the guardians in the instant case did not receive actual notice and did not appear at the hearing. Additionally, the error is apparent from the face of the record. The petition specifically lists the names and addresses of the respondent's guardians and the Center's "Master Treatment Plan" expressly stated that they were guardians of the respondent's person and estate. Moreover, the lack of notice to the guardians was not harmless here because some of the factors relied upon by the trial court to find the respondent subject to involuntary commitment related to the guardians' statutory duties, *e.g.*, the respondent's inability to manage money and to provide for his financial needs. Accordingly, we find that the respondent did not waive the issue.

■ Turning to the merits, we note that section 3—611 provides that the court *shall* direct notice of the time and place of the hearing be served upon the respondent, his responsible relatives, and the persons entitled to receive a copy of the petition pursuant to section 3—609. (405 ILCS 5/3—611 (West 1992).) Section 3—609 lists the respondent's guardian, if any, as a person entitled to receive a copy of the petition. 405 ILCS 5/3—609 (West 1992).

Despite these clear statutory notice requirements, the State argues that they are not applicable to this situation because section 3—403 of the Code (405 ILCS 5/3—403 (West 1992)) does not specifically mention them. The State's argument completely misconstrues the statutory scheme. Section 3—403 deals with a voluntary patient's right to request discharge in writing and specifically refers to the State's duty to file a petition pursuant to section 3—601 if it seeks to involuntarily commit the patient. (405 ILCS 5/3—403 (West 1992).) The notice requirements of sections 3—609 and 3—611 clearly refer to the State's petition to involuntarily commit the respondent.

■ We also find unpersuasive the State's complaints that the record was uncertain about whether the respondent's guardians were court appointed and that return of service was not required. The record clearly showed that the respondent had a guardian of his person and estate. Under the circumstances, we find that the State had the burden of having the record reflect that the guardians were served or offering an excuse for lack of service. Thus, we hold that the State failed to meet the statutory requirements for notice pursuant to sections 3—611 and 3—609 of the Code. Because we reverse based on the lack of notice to the respondent's guardians, we find it unnecessary to address the remaining issues raised by the parties.

Accordingly, we reverse the judgment of the circuit court of Kane County which involuntarily committed the respondent.

Reversed.

BOWMAN and DOYLE, JJ., concur.