No. 2—09—0410
Opinion filed March 7, 2011

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06—CF—931 |
| DWAYNE HOUSTON, | ) ) ) | Honorable John T. Phillips, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Jorgensen and Justice Burke concurred in the judgment and opinion.

**OPINION**

Defendant, Dwayne Houston, was charged with predatory criminal sexual assault, but he was found unfit to stand trial and was placed in the custody of the Department of Human Services. In August 2007, the trial court extended the Department's custody of defendant by two years. See 725 ILCS 5/104—25(d)(1) (West 2006). Following an evidentiary hearing on March 23, 2009, the trial court found that defendant remained unfit to stand trial, that he was subject to involuntary admission under the Mental Health and Developmental Disabilities Code (Mental Health Code) (405 ILCS 5/1—100 *et seq.* (West 2008)), and that he constituted a serious threat to the public safety. The trial court ordered defendant remanded to the Department for further treatment for a term ending in August 2037. In an unsuccessful motion for reconsideration, defendant indicated that his mother,

Salys Henderson, was his legal guardian and that she had not been notified of the March 23, 2009, hearing. Defendant argues on appeal that the failure to provide notice to Henderson requires a new hearing. We disagree and affirm.

According to defendant, the failure to notify his legal guardian violated provisions of the Mental Health Code that he contends are applicable in proceedings for the commitment of a defendant who has been found unfit to stand trial. Defendant alternatively argues that, even if notice to his guardian was not required by statute, the failure to notify her deprived him of due process of law. Defendant faces a significant procedural hurdle in raising these arguments, however. As the State correctly observes, although defendant's motion for reconsideration raised the issue of improper notice, defendant made no objection either prior to or at the March 23, 2009, commitment hearing itself. Indeed, there is nothing in the record suggesting that, before defendant raised the issue in his motion for reconsideration, either the State or the trial court was aware that defendant had a legal guardian. To preserve an issue for appellate review, the defendant normally must object at trial and raise the issue in a posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Under *Enoch*, both steps must be taken or the issue will be forfeited.

Illinois Supreme Court Rule 615(a) (eff. Jan. 1, 1967), which applies in criminal cases, carves out an exception to the forfeiture doctrine. That rule provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). Appellate review under the plain-error rule is available when

"(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it

affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

Significantly, our supreme court has specifically noted that "an unpreserved error will not be 'noticed' under Rule 615(a) unless it is 'clear or obvious.' [Citation.]" *In re M.W.*, 232 Ill. 2d 408, 431 (2009).

Defendant does not invoke the standard formulation of the plain-error rule. Instead, he maintains that, even if he forfeited the issue of notice to his guardian, we may consider the issue under principles set forth in cases arising from civil commitment proceedings. As this court noted in *In re Rovelstad*, 281 Ill. App. 3d 956 (1996):

> "[A] long line of involuntary admission cases has held that '(e)rrors demonstrating noncompliance with the statutory provisions that appear on the face of the record may render a judgment erroneous even if not raised at trial; furthermore, such errors may be considered on appeal under a doctrine analogous to plain error.' " *Id.* at 966 (quoting *In re Martens*, 269 Ill. App. 3d 324, 327 (1995)).

As thus described, this plain-error analogue is not limited to errors that are clear or obvious and that either undermine the integrity of the proceeding or threaten to tip the balance in a close case.

Unlike the civil commitment proceedings in *Rovelstad* and *Martens*, the hearing that culminated with the remand of defendant to the Department for further treatment was part of a criminal prosecution. At that hearing, the trial court considered not only whether defendant was subject to involuntary admission under the Mental Health Code, but also whether he constituted a

serious threat to public safety. 725 ILCS 5/104—25(g)(2) (West 2006). We see no reason to depart from the plain-error analysis applicable in criminal prosecutions.

As noted, the threshold requirement for invocation of the plain-error rule is the existence of an error that is clear or obvious. Unless the failure to notify defendant's guardian of the commitment hearing was clearly or obviously erroneous, the bar of forfeiture must remain in place. Defendant first argues that notice was statutorily required. The argument is premised on sections 3—609 and 3—611 of the Mental Health Code (405 ILCS 5/3—609, 3—611 (West 2008)). Section 3—611 provides that, when a petition for involuntary admission has been filed with the director of a mental health facility, the director of the facility must file the petition with the circuit court within 24 hours (excluding weekends and holidays) of the respondent's admission to the facility, and notice of a hearing on the petition must be served upon "the respondent, his responsible relatives, *and the persons entitled to receive a copy of the petition pursuant to Section 3—609*." (Emphasis added.) 405 ILCS 5/3—611 (West 2008). Section 3—609 requires that a copy of the petition be sent to the respondent's guardian if he or she has one. 405 ILCS 5/3—609 (West 2008). Although this proceeding was not instituted under the Mental Health Code, defendant argues that the notice requirement is made applicable by section 104—25(g)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/104—25(g)(2) (West 2008)). Under that provision, when a defendant remains unfit after an extended period of treatment, the trial court must determine whether he or she "is subject to involuntary admission under the [Mental Health Code] or constitutes a serious threat to the public safety." *Id.* Section 104—25(g)(2) further provides:

"*If so found*, the defendant shall be remanded to the Department of Human Services for further treatment *and shall be treated in the same manner as a civilly committed patient for*

*all purposes*, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." (Emphases added.) *Id.*

Defendant insists that the requirement that he be treated in the same manner as a civilly committed patient incorporates the Mental Health Code's notice requirements. The flaw in this argument is that, under the plain language of section 104—25(g)(2), the provisions of the Mental Health Code take effect only *after* the court has found that the defendant is subject to involuntary admission or constitutes a serious threat to the public safety. See *People v. Lavold*, 262 Ill. App. 3d 984, 992 (1994) ("If so found, the defendant shall be remanded to the Department of Mental Health and Developmental Disabilities for further treatment and shall thenceforth be treated as a civilly committed patient."). Thus, the Mental Health Code is not applicable to the hearing at which the finding is made.

Defendant further argues that the failure to provide notice to his guardian deprived him of due process of law. Defendant cites no decisions, nor are we aware of any, specifically holding that the due process clause requires notice of a commitment hearing to the guardian of either an unfit criminal defendant or a respondent in civil commitment proceedings. The most closely analogous case we know of—*In re K.C.*, 323 Ill. App. 3d 839 (2001)—arose from a proceeding to terminate the parental rights of a disabled adult, Kenya C., for whom a plenary guardian had been appointed. The guardian had not been notified of the proceedings to terminate Kenya C.'s parental rights. On appeal, the court considered "whether Kenya was provided sufficient due process protection in the exercise of her guaranteed rights in light of the failure to name Kenya's guardian as a party respondent and serve her

guardian with notice of all relevant proceedings." *Id.* at 848. In holding that Kenya's right to due process was violated, the court observed that she was statutorily entitled to " 'the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings *** are not intended to be adversary in character, the right to be represented by counsel.' " *Id.* at 847 (quoting 705 ILCS 405/1—5(1) (West 1998)). The court concluded that a plenary guardian's broad authority to make personal decisions concerning the well-being of a disabled adult includes the authority to exercise the aforementioned rights. *Id.* at 851. The court further held that the guardian was a necessary party to the proceedings and that the failure to name the guardian as a party or serve the guardian with notice of the proceedings deprived Kenya C. of due process. *Id.* at 852.

Whether or not this reasoning extends to a proceeding to remand an unfit criminal defendant to the Department for treatment, there is a critical difference between *K.C.* and this case. In *K.C.*, on several occasions prior to the termination of Kenya C.'s parental rights, the trial court had been apprised that her guardian had not been named as a party or served with notice of the proceedings. *Id.* at 841. In this case, there is nothing in the record to indicate that either the trial court or the State was aware that a guardian had been appointed until defendant moved for reconsideration of the order remanding him to the Department. There are limits to the State's obligation to provide notice even to parties who are indisputably entitled to it. Notice must be reasonably calculated to apprise an interested party of the pendency of an action, but the right to due process is not abridged if such notice fails to reach the intended recipient. See *County of Kankakee v. Pollution Control Board*, 396 Ill. App. 3d 1000, 1012 (2009). Thus, although the due process clause requires notice to the parent of a minor who is the subject of a delinquency proceeding (*In re J.P.J.*, 109 Ill. 2d 129, 135 (1985)),

it has been held that the State's failure to notify a noncustodial parent was not a due process violation where the failure was not the result of a want of diligence on the State's part (*id.* at 136-37). And diligence will be assumed unless the issue of the failure to serve the noncustodial parent was raised in the trial court. *Id.* at 137. Similar reasoning applies here. Unless the State has reason to know that a guardian has been appointed for an adult criminal defendant, failure to serve the guardian with notice does not signify a lack of diligence in a proceeding to determine whether to remand the defendant to the Department for treatment.

We therefore conclude that the failure to provide notice to defendant's guardian was not a clear or obvious error. Moreover, in light of the absence of evidence that the State was aware of the existence of a guardian, we conclude that, even if the failure to notify the guardian was error, it did not compromise the fairness of the hearing or the integrity of the judicial process. In this regard, we note defendant's contention that, if his guardian had been notified of the proceeding, she might have provided testimony bearing on the issues to be decided at the hearing. However, what that testimony might have been, and whether it would have been favorable to defendant, are matters of pure conjecture. In any event, the State's failure to notify defendant's guardian did not prevent defendant from calling her as a witness.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.